BOARD OF WATER COMMISSIONERS OF NEW LONDON *vs.*
WALTER R. PERRY.

Second Judicial District, Norwich, May Term, 1897. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The rights of a riparian proprietor in the waters of one stream are not
impaired by the appropriation to public use of his rights in the waters
of another; nor does such taking alter in any respect the then existing
legal rights of proprietors below the junction of the two streams, to
the accustomed flow of the waters of the unappropriated stream.

For an unreasonable use of the stream by an upper riparian proprietor, an
action will lie in favor of a lower proprietor, notwithstanding the lat-
ter has suffered no actual damage.

A judge before whom condemnation proceedings are pending has power
to allow reasonable amendments at any stage of the hearing.

The allowance of an amendment which sets forth fully and distinctly what
the applicant claims was included in the vote of condemnation, and
which does not enlarge the legal effect of such vote, is unobjectionable.

The appropriation for public use of "the waters" of a brook is, unless
otherwise limited, an appropriation of all its waters; and an appropri-
ation by means of reservoirs and distributing pipes, naturally implies
that they shall be sufficient in all respects to answer public necessities.

[Argued May 27th—decided July 13th, 1897.]

APPLICATION to the *Hon. Milton A. Shumway*, a judge of
the Superior Court, to determine the compensation to be
paid to several riparian owners for the appropriation of their
land and riparian rights to public use; facts found and an
award of $8,000 made in favor of the respondent, and appeal
by him for alleged errors in the rulings of the judge. *No
error.*

The application was based upon votes of the plaintiff,
under authority of Special Laws, Vol. VII, p. 157, adopting
a plan of its engineer, as described in a certain report, with
maps and surveys, on file in its office, for securing an addi-
tional water supply for New London from Briggs brook;
and condemning and taking "the right to construct and
maintain upon lands of Walter R. Perry, in the town of
Waterford, hereinafter described, a dam and reservoir known

as No. 2, and to collect the waters of said Briggs brook by means of said dam and reservoir No. 2, and a dam and reservoir known as No. 3, to be constructed near the source of said brook—the location of which dams and reservoirs is shown in said report, surveys and maps—and distribute the waters so collected by pipe lines into the city of New London ; " and condemning, taking and appropriating " all lands, rights, easements and privileges that may be necessary for carrying out the plan so adopted," including an eight foot strip of land for a pipe line.   It named several parties including said Perry, as " the persons affected by said plan, having lands, rights, easements and privileges at and below said dam and reservoir No. 2 ; " adding the following : " The rights, easements and privileges so condemned, appropriated and taken, are those claimed by the said proprietors at and below dam No. 2, respectively, to the flow of the waters of said brook unimpeded by said dams and reservoirs Nos. 2 and 3."

An amendment was afterwards allowed, reading as follows : —" The rights and privileges claimed to be so condemned, appropriated and taken, are the right on the part of the petitioners as against said proprietors to construct and maintain dams and reservoirs at the locations designated as Nos. 2 and 3, and pipe lines leading therefrom, all of them sufficient in size, material, height, capacity, and method of construction, to detain, collect, withhold and divert all the waters of Briggs brook above dam No. 2, and conduct the same by said pipe lines into the city of New London for the use of its inhabitants, and thereby to condemn the right, privilege and easement as now enjoyed by said proprietors to have the waters of said Briggs brook flow to them respectively, unobstructed, undiminished and undiverted.   And your petitioners therefore request your honor to estimate and determine the amount of compensation which the respondents ought respectively to receive for any and all damages occasioned by the action of the board, by the withholding, collecting, detaining and diverting all the waters of said stream above the location of said dam No. 2."

The allegations in the application were found true, and the following special finding was also made : —

The defendant, Perry, was at the time of the beginning of the proceedings of condemnation, the owner of 106 acres of land, situated near to and northwest of the city of New London. Running through said land a distance of about one half mile is a stream called Briggs brook, upon which stream the plaintiff proposed to place a dam, designated on the map as dam No. 2. There is running through said land another stream called Edgecomb brook, which joins said Briggs brook on land of the defendant below said dam No. 2. On said Edgecomb brook the defendant had established and had in operation for about nine years, an ice plant consisting of a pond formed by a dam on said Edgecomb brook, with an ice-house, ice machinery, and a barn near said pond. At the time the said ice plant was established on Edgecomb brook, the defendant did not own any more than a small part of the land through which Briggs brook flows, but he became the owner of the greater part of land on Briggs brook about three years before these proceedings were instituted. The land last acquired by the defendant lies on both sides of said Briggs brook, and is known as the Cavarly farm, containing about 100 acres, and adjoins the land before owned by the defendant on Edgecomb brook, and Edgecomb brook flows into Briggs brook on or near the boundary of the land last acquired by the defendant.

On Briggs brook, below the junction of Edgecomb brook, is situated the ice-pond and ice-houses of Benjamin Rogers and others, which have been used and occupied by said Rogers for harvesting and storing ice for market for more than 20 years. Of the total area drained by Briggs brook, a little less than 70 per cent will be taken therefrom by the erection of the dam as proposed by the plaintiff. The land of the defendant below the dam called dam No. 2, is so situated that a dam may be constructed and the water ponded on land of the defendant. Such pond would have an area of about nine acres, and if constructed would have to be located wholly upon the Cavarly farm, the last acquired land of the said Perry, as above mentioned.

In assessing damages to the Rogers heirs, and to said Perry, it was assumed by the court that each had acquired the right to use and occupy the premises named, and had acquired the right to use the water of Edgecomb and Briggs brooks in the same manner, and to the same extent as they were in fact used and occupied by them, and compensation was given each of them accordingly for the damages sustained severally by them, occasioned by diverting the water of Briggs brook in the manner set out in the application; and to said Perry additional compensation was given for the land taken and to be occupied in construction of pipe line, as described in the application.

The entire drainage area of Edgecomb brook is 290 acres; of Briggs brook 1,257 acres. The drainage area of Briggs brook diverted by the taking of the plaintiff is 1,052 acres. None of the water of Edgecomb brook is taken by the plaintiff. The water of Briggs brook is of value to said Perry in supplying water to his ice-pond on Edgecomb brook, though not used by him for that purpose. The damage arising to said Perry by reason of the diversion of the water of Briggs brook and depriving him of the use thereof for the purpose named, as well as for all other purposes for which it can be used, was considered, and compensation given therefor. The contingency that the riparian owners below said Perry might at some time hereafter insist that he cease from using Edgecomb brook for ice purposes, as the same is now used by him, in case said Perry has not the right so to use it, was not considered as affecting his damages or compensation for diverting the waters of Briggs brook. It did not appear that said Perry had not the right to use Edgecomb brook for cutting and taking therefrom ice for mercantile purposes.

The sum of $8,000 was assessed as the compensation due to Perry, and he appealed, assigning sundry errors, which are stated in the opinion.

*Hadlai A. Hull* and *William F. M. Rogers*, for the appellant (respondent).

The trial judge had no jurisdiction. The city should have

proceeded *de novo* under the recent Act. The defendant will not have the right to take ice for mercantile purposes, if the taking substantially affects riparian owners below. *Howe* v. *Andrews,* 62 Conn. 400. It seems too plain for argument that reducing the water supply of the Rogers people 83 per cent will materially change the circumstances. The water must be ponded, which requires a long time. This is an additional right which Mr. Perry now has, the exercise of which will materially affect riparian owners below, under the new circumstances. The Rogers owners have prescriptive rights. *Ingraham* v. *Hutchinson,* 2 Conn. 584; *Buddington et al.* v. *Bradley,* 10 id. 213; *Wadsworth* v. *Tillotson,* 15 id. 373; *Williams* v. *Wadsworth,* 51 id. 305, 306. Rogers was not bound to take precautionary legal proceedings against Perry while Perry was building his ice plant. *Williams* v. *Wadsworth, supra.* The defendant Perry acquired no license from Rogers by reason of Rogers' silence. *Johnson* v. *Lewis,* 13 Conn. 303. It is doubtful even whether Rogers in the past, when his water supply was sufficient, could have brought suit against Perry, or *vice versa,* to prevent the acquiring of any right under the statute of limitations. *Wadsworth* v. *Tillotson, supra,* p. 372. The plaintiff should not be allowed to evade compensating the defendant for all of the actual damage it causes him, whether by the actual taking of property or by injuring the property or property rights not actually taken. *Kellogg* v. *New Britain,* 62 Conn. 232; Lewis on Eminent Domain, § 142; *Cummings* v. *Barrett,* 10 Cush. 189; *Paine* v. *Woods,* 108 Mass. 173.

*Walter C. Noyes,* for the appellee (petitioner).

The trial judge had jurisdiction. The landowner has no constitutional right to any particular method of procedure, nor are his constitutional rights infringed by any change in the method of fixing his compensation. *Zimmerman* v. *Canfield,* 42 Ohio St. 463; Lewis on Eminent Domain, § 366, and cases cited. It appears that the defendant is the owner of an ice plant on Edgecomb brook, but that none of the water of that brook is taken by these proceedings. The defendant

claimed, however, that it was possible to conduct the waters of Briggs brook into Edgecomb brook to supply any deficiency therein. For the damages arising from the diversion of this possible auxiliary supply the judge awarded compensation. Such award was at the request of the defendant and in his favor. Now the defendant, having been awarded full damages for any injury to his Edgecomb supply by these proceedings, complains because the judge did not take into consideration the contingency that riparian owners below the defendant might at some time hereafter insist that the defendant should cease to use Edgecomb brook in the manner now used by him. This claim is effectually disposed of, however, by the further finding that "it did not appear that said Perry had not the right to use Edgecomb brook for cutting and taking ice therefrom for mercantile purposes,"—which is all the right the defendant claims or exercises. It was incumbent upon the defendant, if he claimed damages from the possibility of the exercise of a superior right, to show that such superior right existed. If, however, the defendant should sustain damages by the exercise of the superior rights of a lower proprietor, it is not clear how the city of New London is responsible therefor. Even if the act of the city was the occasion of the exercise of such superior right, the defendant would have no claim for damages. One who usurps the rights of another, cannot complain when the owner returns to his own. The property taken was sufficiently described. Lewis on Em. Dom. 307. Moreover, any objection to the sufficiency of the description should have been taken by demurrer. Formal defects are waived, if not insisted upon until after a hearing on the merits. *Logansport R. R.* v. *Buchanan,* 52 Ind. 163. The amendment was properly allowed and was merely a statement of the claims of the condemning party made at the request of opposing parties, and not an amendment, in any sense, of the vote of condemnation. Lewis on Em. Dom. § 361.

BALDWIN, J. The main claim of the appellant is that he should have been given larger compensation for the impair-

ment of his right to avail himself of his ice-pond as fully as heretofore.

This pond is on Edgecomb brook above its junction with a larger stream, known as Briggs brook. All the water of Briggs brook north of dam No. 2 (which is above this junction), the water board has voted to appropriate. The appellant, as a riparian owner upon both brooks, down to a point below their junction, and of the land lying between them, had a right to connect them by a canal, in order to feed his ice-pond, should he at any time find its natural inflow insufficient, from the waters of Briggs brook. This source of supply has now been condemned by the action of the appellee, and the damage thus occasioned to him has been included in the sum assessed in his favor. What he complains of is that nothing was included for such consequential loss as he may hereafter suffer, should his interruption of the natural flow of Edgecomb brook, for the purpose of filling his pond or by harvesting ice, be at any time an infringement of the rights of riparian proprietors on Briggs brook below the junction.

By these condemnation proceedings the drainage area of Briggs brook is so far appropriated to the use of the city of New London, that what remains is less than that of Edgecomb brook. What has been the greater stream may thus become the smaller, and the riparian proprietors below the junction must henceforth rely for their supply of water mainly on what is contributed by Edgecomb brook, and flows through the appellant's ice-pond. But the action of the water board has in no way diminished his rights in the water of Edgecomb brook, whether ponded or unponded, running or frozen. He had, before, the right to make a reasonable use of it, and for that purpose to detain or pond it in a reasonable manner, having in view the size and capacity of the stream, and the reasonable rights of riparian proprietors below, whether upon the same stream, or of one to which it is a tributary. *Mason* v. *Hoyle*, 56 Conn. 255, 265–268; *Elliot* v. *Fitchburg R. R. Co.*, 10 Cush. 191, 195. This right he retains unimpaired and unaffected by the appropriation by the appellee of the waters of Briggs brook. The riparian proprietors upon that

have been awarded,just compensation for their loss, and can henceforth expect to enjoy of the waters above the dam which is to be built across it, only what from time to time the city may have no occasion to use. They stand in relation to the appellant precisely as if Briggs brook, above that dam, had never existed. The waters which it supplied may have been so abundant that the diminution and occasional interruption of the flow of Edgecomb brook, due to its use by the appellant, caused them no substantial injury, while they may now suffer great inconvenience from his continuance of the same use. If so, for the damage thus occasioned, so far as it may be the natural consequence of what has been done with respect to Briggs brook, they have been fully paid; and so far as it may be due to the maintenance of the ice-pond on Edgecomb brook, they retain all rights of action that they have ever had, as lower riparian proprietors upon the channel through which its waters flowed. If it was reasonable for the appellant, prior to these condemnation proceedings, as an upper riparian proprietor upon Edgecomb brook, and irrespective of his rights in Briggs brook, to pond and use its waters, as he did, for ice purposes, it will be reasonable for him to continue in the same course of action; and otherwise, it will not be. These waters remain the same, and his rights in them as a riparian owner remain the same.

It was found that the Rogers' ice-pond has been maintained for more than twenty years on Briggs brook, not far below the junction. It has been fed by both brooks. Henceforth its supply from one of them will be small and precarious; but from the other it will receive as much as before, and its owners have no prescriptive right to demand more. Prescription is measured by adverse user; and their user has been limited to such water as the appellant, because he found its use unnecessary for the purposes of his ice-pond, allowed to flow over his dam. If he has been hitherto consuming more water from Edgecomb brook than was reasonable, an action could have been brought in their favor, notwithstanding they had suffered no actual damage. *Parker* v. *Griswold*, 17 Conn. 288, 306. If he should hereafter consume

more than is reasonable, an action of the same character would be open to them. His rights in Edgecomb brook are neither greater nor less than they were before he became a riparian proprietor upon Briggs brook.

The judge of the Superior Court states in his finding that his assessments of damages were made on the assumption that the owners of each ice-pond had acquired the right to use the waters flowing into it in the manner in which they were then using them, and to the same extent. So far as the appellant is concerned, we do not understand this to mean anything more than that it was assumed that he had then a right to do what he then was doing, by virtue of his riparian proprietorship. It was not an attempt to adjudicate upon his rights after the condemnation proceedings were consummated, as against the owners of land lower down upon the stream.

It is contended that the report, maps, and surveys, referred to in the application, were insufficient to give a complete description of the rights and property taken. This objection was not taken before *Judge Shumway*, and cannot, therefore, be considered on appeal.

The amendment, stating what the appellee claimed to be included in its vote of condemnation, was properly allowed. The vote, indeed, could not thus be altered; but by stating what was claimed to be its legal effect, any opportunity for misconception of the appellee's position was removed. By its terms there was appropriated the right to construct two reservoirs into which "to collect the waters of Briggs brook," and to "distribute the waters so collected by pipe lines into the city of New London." The amendment states that under this is claimed the right to construct dams, reservoirs, and pipe lines, "sufficient in size, material, height, capacity and method of construction to detain, collect, withhold and divert all the waters of Briggs brook above dam No. 2." An appropriation for public use of "the waters" of a brook is, unless otherwise limited, an appropriation of all its waters; and an appropriation by means of reservoirs and distributing pipes naturally implies that they shall be sufficient in all respects to answer the public necessities. The appellee's claim

was fully warranted by the language of the vote, and the interests of both parties were promoted by having it distinctly stated upon the record. It is a necessary incident of proceedings of this nature that the judge, before whom they may be brought, should have power to allow reasonable amendments at any stage of the hearing.

There is no error.

In this opinion the other judges concurred.