STILLMAN H. RICE ET AL. *v.* HOWARD S. IVES, STATE
HIGHWAY COMMISSIONER

SUPERIOR COURT          NEW HAVEN COUNTY          FILE No. 105303
                         AT NEW HAVEN

Memorandum filed June 30, 1966

*Edward F. Becker,* of New Haven, for the plaintiffs.

*Harold M. Mulvey,* attorney general, and *Milton H. Richman* and *S. Victor Feingold,* assistant attorneys general, for the defendant.

PARSKEY, J. This is a condemnation proceeding. The plaintiffs are the owners of 80.3 acres of land in the town of North Haven. On April 27, 1964, the defendant filed a notice of condemnation wherein he found it necessary to take two parcels of the plaintiffs' land, one containing 8.8 acres, the other 0.34 acres. In addition, he acquired the right to enter the plaintiffs' remaining land for the following purposes: (a) To construct and maintain certain wing walls; (b) to relocate a brook channel; (c) to construct a permanent berm; (d) to set in place permanent riprap; (e) to construct and maintain a paved ditch; (f) to place permanent slope pavings; (g) to construct a permanent dike; (h) to construct permanent slopes. Damages were assessed at $27,000. On September 2, 1964, the plaintiffs applied to this court for a reassessment of damages. After the filing of an answer, on October 16, 1964, the matter was referred to a state referee.

On March 9, 1965, the defendant filed with the clerk of this court an amended notice of condemnation involving the same land as that involved in the original notice. No change was made in the 8.8 acre parcel. The 0.34 acre parcel was reduced to 0.31 acres. All rights of entry and easements in the original notice were eliminated and in their place the defendant acquired the right to enter the remaining land of the plaintiffs in order to construct and maintain a special end wall and to instal and maintain twin eighty-four-inch reinforced concrete pipes together with the right to discharge water from the end wall and pipes upon, over and across the plaintiffs' remaining land. Damages were reassessed at $85,000. Plaintiffs did not apply to this court or to a judge hereof for a reassessment. In lieu of making another application and referring it to a state referee, the plaintiffs obtained the con-

sent of the defendant to file an "amended complaint" incorporating all of the essential allegations to present their grievances as to the amount of damages stated in the amended notice of condemnation. The amended complaint was filed on May 26, 1965. On June 1, 1965, the defendant filed his answer. When the hearing was held, the parties submitted evidence on the issues created by the amended complaint and answer thereto. At no time before the presentation of evidence began did the defendant claim that the referee was without jurisdiction to hear such evidence or report on the issues raised by the amended complaint and answer. Defendant has filed a motion to erase from the docket so much of the plaintiffs' appeal as regards matters contained in plaintiffs' amended complaint. He has also filed exceptions and objections to the referee's report. Plaintiffs have moved for the acceptance of the referee's report.

Jurisdiction is the power in a court to hear and determine the cause of action presented to it. It must exist in three particulars: the subject matter of the cause, the parties and the process. *Mazzei* v. *Cantales,* 142 Conn. 173, 175. A lack of jurisdiction over the person may be waived and is waived by a general appearance in the action. *Foley* v. *George A. Douglas & Bro., Inc.,* 121 Conn. 377, 380. The same result follows where a party appears in the absence of service of process in a condemnation proceeding. *Ives* v. *East Haven,* 48 Conn. 272, 286. Jurisdiction of the subject matter requires that (1) the court have cognizance of the class of cases to which the one to be adjudged belongs, and (2) the point decided must be, in substance and effect, within the issue. *New Haven Sand Blast Co.* v. *Dreisbach,* 104 Conn. 322, 329. A condemnation proceeding is a proceeding in rem. *Stevens* v. *Battell,* 49 Conn. 156, 162. Defendant does not question

that eminent domain proceedings are properly cognizable by the Superior Court, nor that the court had jurisdiction over the subject property by virtue of the notice filed by the defendant April 27, 1964, nor that the court had jurisdiction of the parties by virtue of the appeal taken by the plaintiffs from the original assessment. As a general rule, jurisdiction once acquired is not lost or divested by subsequent events. *Bailey* v. *Mars,* 138 Conn. 593, 601. As for the amended notice of condemnation, the amended complaint and the answer, the defendant cannot be heard to complain if the plaintiffs and the court treated the pleadings in the precise manner in which they were proffered, viz., as a continuation of a pending matter. Nor does the court lose the power to permit reasonable amendments merely because the proceeding involves the exercise of the power of eminent domain. *Water Commissioners* v. *Perry,* 69 Conn. 461, 470.

Even were the court to treat the amended notice of condemnation as an abandonment of the original notice and the commencement of a new condemnation, the present motion would not lie. Since the amended complaint meets all the requirements for an appeal except for service upon the defendant and since the defendant not only consented to the filing of the amended complaint but also filed an answer thereto, the principle of waiver still applies. The defendant suggests that public policy prevents the defendant from waiving the statutory requirements for service of process but points to no authority for this unusual position. Under the facts of this case, for the court to accept the defendant's suggestion would result in the announcement of a doctrine that the state, acting through its highest legal officer, can engage in sneaky legal tactics with impunity. No court worthy of its name could

condone such tactics, much less incorporate them into a rule of law.

It remains to consider the matter of reference with respect to the amended notice. This is not a jurisdictional question. The Superior Court is not ousted of jurisdiction merely for failure to make a proper reference. The matter is at best irregular and could also be waived by conduct of the parties. *Andrews* v. *Wheaton,* 23 Conn. 112, 117. In this instance, at no time during the hearing did the defendant question the power of the referee to hear the matter based on the amended notice. Defendant even permitted exhibits relating to the new matter to be received without objection. In view of this, although the original reference was sufficient under the circumstances of this case; *Azzolina* v. *Sons of Italy,* 119 Conn. 681, 688; the court will nevertheless correct the record by entering an appropriate order nunc pro tunc.

Defendant has interposed three basic objections to the report of the referee: First, he was denied an opportunity to offer evidence tending to show that plaintiffs tortiously interfered with defendant's original easement; second, the referee erred in allowing any depreciation for loss of access; third, the referee erred in allowing any depreciation for future flooding.

### PLAINTIFFS' TORTIOUS CONDUCT

A condemnation proceeding is limited in scope. When an appeal is taken, the issue under § 13a-76 of the General Statutes is limited to a reassessment of damages. Matters which tend to reduce the award will not be entertained unless raised in proper form. Thus, evidence of benefits to the subject property could not be introduced without a prior assessment. Similarly, a claim of the con-

demning authority for value of the use against an owner who remains in possession after the time of taking must be determined in an independent proceeding. *Clark* v. *Cox,* 134 Conn. 226, 234. So too a claim against an owner occupant for waste. *New Jersey Highway Authority* v. *Wood,* 39 N.J. Super. 575. Nor can the damages be enhanced as a result of negligence of the condemnor in the construction of the project or in trespass upon the remainder area. 4 Nichols, Eminent Domain § 14.245. Whatever action the defendant may have against the plaintiffs for claimed tortious interference with his easement must be raised in an independent proceeding.

## Loss of Access

Prior to condemnation, plaintiffs had access to Washington Avenue, the most widely traveled public highway passing through the business center of North Haven in a north and south direction, by means of two gravel roads: one, known as Railroad Avenue, is 600 feet to the plaintiffs' property; the other, known as Ferro Lane, is 1000 feet to the plaintiffs' property. As a result of the condemnation, access to Washington Avenue has been cut off from both roads. In their place defendant has constructed a new road, called Stillman Road, which runs north and south from plaintiffs' property to Broadway, a heavily traveled public highway about one mile distant. Defendant asserts that plaintiffs have sustained no damage as a result of the circuitous route.

Where a property owner has access to his property in two directions, one more circuitous than the other, the mere removal of the more convenient route will not result in damage peculiar to him. *Warner* v. *New York, N.H. & H.R. Co.,* 86 Conn. 561, 564; *Kachele* v. *Bridgeport Hydraulic Co.,* 109

Conn. 151, 156. This doctrine, which is not universally followed in other jurisdictions and which has been recognized as harsh in our own state; *Park City Yacht Club* v. *Bridgeport,* 85 Conn. 366, 374; is not to be extended so as to permit the defendant to construct a circuitous route as the only means of access to the plaintiffs' property.

## FUTURE FLOODING

Route I-91 requires drainage of surface water for a distance of two miles in the vicinity of the plaintiffs' property. Under the original design, the defendant proposed to accumulate the runoff in a channel which would traverse the plaintiffs' property. The channel was designed to join a meandering brook which ultimately empties into the Quinnipiac River. Under the amended notice, the design was changed dramatically. The channel was eliminated; instead, the accumulated surface water will spread out over the plaintiffs' land in seeking its ultimate passage to the river. The area of the plaintiffs' land subject to this discharge is approximately 1750 feet long and 750 feet wide. The runoff will be discharged from two eighty-four-inch pipes. These pipes are capable of discharging water at the rate of 180,000 gallons per minute. In addition to the regular runoff, the drainage rights which the defendant acquired will cause serious flooding at times on the plaintiffs' remaining land. The referee considered the probability of future flooding in making his reassessment. Defendant argues that the probability of future flooding is too remote to be evaluated. Defendant's highway engineer, however, testified that the flooding which has occurred in the state in recent years has caused the highway department to design the twin pipes for flooding capacity as a matter of insurance. No one questions the defendant's right

to secure flooding insurance provided he does not procure it at the owner's expense. Engineering prudence dictated the size of the pipes; a prudent appraiser would be foolhardy if he failed to consider this factor in his evaluation.

Accordingly, an order may enter, effective June 1, 1965, referring to the Hon. Patrick B. O'Sullivan, referee, for reassessment of damages the matters contained in the defendant's amended notice of condemnation, the plaintiffs' amended complaint relating thereto, and the defendant's answer. Defendant's motion to erase is denied. Defendant's exceptions and objections to the referee's report are overruled. Plaintiffs' motion for acceptance of the referee's report is granted; the referee's report is accepted. Judgment may enter for the plaintiffs to recover damages of $162,500, less $85,000 already paid, together with interest and costs. Plaintiffs are entitled to interest at the legal rate of 6 percent on $162,500 from April 27, 1964, to the date the deposit of $27,000 became available to them; on $135,500 from the date of availability of the $27,000 deposit to the date the deposit of $85,000 became available to them; on $77,500 from the date of the availability of the $85,000 deposit to the date of final judgment. *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 214. Since the amount of interest is a mathematical computation, the parties are requested to file a stipulation computing the interest in accordance with this memorandum.