[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE #112.5
The respondent moves to strike count two of the second revised appeal and application on the grounds that the applicant's allegations of a de facto taking of her premises, are legally insufficient.
On July 11, 1996, the applicant, Marjorie Crump ("Crump"), filed this action, pursuant to General Statutes §8-132, against the respondent, Connecticut Resources Recovery Authority ("CRRA"), setting forth causes of action arising out of the taking of real property located at 784 River Road, Shelton, Connecticut, by the CRRA pursuant to General Statutes § 8-129.
In her second revised two count appeal and application for review dated October 30, 1997, Crump alleges that the statement of compensation is inadequate to compensate her for her loss (count one), and that a de facto taking of the property by the CRRA occurred prior to the CRRA's February 28, 1995 taking (count two).
Presently before the court is the CRRA's motion to strike count two, which was filed on November 25, 1997 with a supporting memorandum. In the memorandum, the CRRA contends that count two is legally insufficient, because "it fails to set forth allegations from which the Court could conclude that plaintiff was deprived of the reasonable and necessary use and enjoyment of her property or that there was a substantial interference with her property which destroyed or nullified its value." On January 9, 1998, Crump filed a memorandum in opposition.
In count two, Crump alleges the following facts. She was CT Page 5761 the owner of real property located at 784 River Road, Shelton, Connecticut. (Count two, ¶¶ 5 and 6.) The CRRA operated the Shelton Landfill, which abutted Crump's property, and allegedly "found it necessary to condemn said property in order to comply with all laws, regulations, and permits affecting the Shelton Landfill or the use thereof. . . ." (Count two, ¶¶ 4 and 8.) "On or about February 28, 1996, [the CRRA] filed with the town clerk of the city of Shelton a Certificate of Taking for the premises . . . issued by the Clerk of the Superior Court, Judicial District of Hartford at Hartford." (Count two, ¶ 4.) "The [CRRA] has indicated that gasses and other pollutants emanating from [the landfill] entered, adversely affected, and polluted the Premises for a substantial period of time prior to February 28, 1996." (Count two, ¶ 10.) The CRRA's "failure to prevent gasses and other pollutants from escaping its property and entering into, on and/or over the Premises caused a de facto taking . . . of the premises for a period of time substantially prior to February 28, 1996." (Count two, ¶ 11.)
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215,618 A.2d 25 (1992).
The constitution of Connecticut, article first, § 11, provides in pertinent part: "The property of no person shall be taken for public use, without just compensation there or." "The word `taken' in article first, § 11 of our state constitution means the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain. . . . Although property may be taken without any actual appropriation or physical intrusion . . . there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land CT Page 5762 is, for all practical purposes, destroyed. . . . A constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." (Citations omitted; internal quotation marks omitted.) Tammv. Burns, 222 Conn. 280, 284, 610 A.2d 590 (1992).
In Textron, Inc. v. Wood, 167 Conn. 334, 350,355 A.2d 307 (1974), the court found that a substantial interference with property rights had amounted to a de facto taking of the property in the constitutional sense. Explaining the term "substantial interference," the Textron court opined: "The precise dimensions of a `substantial interference' sufficient to amount to a taking in the constitutional sense are not always clear since the concept of substantial interference is not a static one, but one that has developed over the years in response to the changing needs of our society." Id., 347.
The date of taking is filed by General Statutes § 8-129
as the date of the recording of the certificate of taking.Fishman v. Urban Redevelopment Commission, 175 Conn. 265, 257,397 A.2d 1349 (1978). "If, however, on the basis of special equitable considerations, the condemnee claims any other date as the true date of the taking, it is incumbent upon him to present this claim to the Superior Court prior to the entry of the order referring to a referee, for review, the defendant's assessment of damages. . . . In that way, the court could then decide whether a different date should be fixed as the taking date, and, when the reference was made, the referee could assess the factors as they existed on the date set by the court as the actual taking date." (Citations omitted internal quotation marks omitted.) Id., 267-68.
In count two of the present case, Crump seeks to advance the date of the taking of property in which a certificate of taking was filed in accordance with General Statutes § 8-129. See Fishman v. Urban Redevelopment Commission, supra,175 Conn. 267-68; Textron, Inc. v. Wood, supra, 167 Conn. 346-50. The CRRA relies on Tamm v. Burns, supra, 222 Conn. 280 andDeMello v. Plainville, 170 Conn. 675, 368 A.2d 71 (1976), to support its contention that this count does not sufficiently allege a de facto taking, but both cases are distinguishable.
In Tamm, "the complaint allege[d] that the commissioner's CT Page 5763 removal of trees from state property . . . exposed the plaintiff's property to the noise, unsightliness, and fumes, as well as toxic emissions from traffic on Interstate 95, and that his operation of a weigh station . . . resulted in additional noise, unsightliness, and fumes, as well as the presence of a holding pond for toxic substances on property adjacent to the plaintiff's property." Tamm v. Burns, supra,222 Conn. 285. Applying the constitutional taking rule to the facts of the case, the Tamm court held: "As a matter of law, allegations that the state has exposed the plaintiff's property to unpleasant sights, sounds and vehicle pollutants by its lawful construction of a weigh station do not support the claim of an interference sufficiently grave to be deemed a `taking' in the constitutional sense of even part of that property." Id., 288.
The allegations in the present case distinguish it fromTamm. Crump alleges that "[t]he [CRRA] has indicated that gasses and other pollutants emanatings from [the landfill] entered, adversely affected, and polluted the premises for a substantial period of time prior to February 28, 1996." Moreover, the property here was allegedly polluted to the point where the CRRA "found it necessary to condemn said property in order to comply with all laws, regulations, and permits affecting the Shelton Landfill or the use thereof . . . ." By contrast, in Tamm, the conduct of the defendant never rose to the level of substantial interference and no certificate of taking was filed in accordance with General Statutes § 8-129.
The present case is also distinguishable from DeMello v.Plainville, supra, 170 Conn. 675, cited by the CRRA. InDemello, the plaintiff was ordered to remove a building from his property because it was creating a health hazard. He claimed that this was a taking without compensation. TheDemello court characterized the enforcement of public health codes and the abatement of nuisances as "legitimate subjects for the exercise of the state's police power." Id., 578. It then distinguished the police power from the power of eminent domain, writing: "Eminent domain takes property because it is useful to the public. The police power regulates the use of property or impairs the rights in property, because the free exercise of these rights is detrimental to public interest." (Internal quotation marks omitted.) Id., 679. CT Page 5764
There is no dispute that the activities of the CRRA reached the point of substantial interference by at least February 28, 1996, when the certificate of taking was issued. The concept of substantial interference is not a static one.Textron, Inc. v. Wood, supra, 167 Conn. 347. Viewing the allegations in the light most favorable to Crump, the pollution emanating from the CRRA's property could have substantially interfered with her property either in a manner which destroyed or nullified its value or by which her right to its use or enjoyment was in a substantial degree abridged or destroyed, resulting in a de facto taking prior to February 28, 1996, when the certificate of taking was issued.
Accordingly, the CRRA's motion to strike count two of the second revised appeal and application filed on October 30, 1997, is denied.
Hennessey, J.