THE FOOD STUDIO, INC. *v.* FABIOLA'S
(AC 18846)

O'Connell, C. J., and Foti and Schaller, Js.

Argued December 10, 1999—officially released March 14, 2000

*Martin A. Goldberg*, for the appellant (plaintiff).

*Henry C. Ide*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, The Food Studio, Inc., appeals from the judgment of the trial court, rendered

following a court trial, awarding it $20 in damages on one count of a four count complaint concerning the alleged breach of lease agreements by the defendant partnership, Fabiola's. On appeal, the plaintiff claims that the court improperly concluded that (1) the defendant made the required payments under a retail premises sublease agreement between it and the plaintiff, (2) the defendant made the required payments under, and otherwise complied with, an equipment lease agreement between it and the plaintiff and (3) the plaintiff was not entitled to attorney's fees incurred in its enforcement of either the retail premises sublease or the equipment lease. We affirm the judgment of the trial court.

The court found the following facts. The plaintiff is a Connecticut corporation, the president of which is Cynthia Kruth. In 1993, an entity known as Foursquare Associates leased a portion of the premises located at 195 West Main Street in Avon (premises) to the plaintiff for the retail sale of prepared foods. After occupying the premises itself, the plaintiff entered into a sublease agreement with the defendant, a partnership the partners of which were Fabiola Bowles and Francesco Bowles, sister and brother.[1] The parties executed a sublease on November 1, 1995. That same day, the plaintiff, in a separate agreement, leased various items of restaurant equipment to the defendant.

The sublease required a security deposit of $1450, monthly rental payments of $1450 and "the cost of electricity and a pro rata share of sewer assessment and real estate taxes." The equipment lease called for a security deposit of $300 and monthly payments of $200 with an option to buy many of the items. Both leases specified December 1, 1995, as the day that the

---

[1] The partners intended to use the premises for purposes similar to those of the plaintiff.

Bowleses would open for business. Both leases provided that "[e]ither party needing to take legal action to enforce this agreement will be entitled to reasonable legal fees from the other party." Finally, the leases were coterminous and were to expire on December 31, 1996, that being the same day the lease between the plaintiff and Foursquare Associates was to terminate.

The restaurant opened on November 20, 1995, and friction between the parties occurred almost immediately. The defendant identified problems with several items of the leased equipment, including leaks in sinks, defective drains and seals in refrigerators, and a convection oven that did not cook evenly.

In the first few months of the leases, the defendant was consistently late by several days with rental payments. The leases called for the monthly rental payments to be made "in advance." The December, 1995 payment was received on December 7; the January, 1996 payment was received on January 4; the February payment was received on February 20.[2] Although the early payments were made to Kruth in person when she visited the premises, February marked the month that the defendant began mailing its payments.[3] The March, 1996 payment was received on March 14, 1996.

The plaintiff brought suit against the defendant in March, 1996. The complaint, as amended, was in four counts. The first count alleged that the defendant failed to make timely sublease rental payments; the plaintiff sought to recover those amounts plus attorney's fees and costs. The second count alleged that (1) the defen-

---

[2] The payment was postmarked February 6.

[3] The Bowleses claimed that Kruth and her husband created a disturbance when they came to the premises to collect the February rent. Because of this, the defendant informed the plaintiff that all future communications should be in writing. At that time, the defendant had not made the real estate tax payment pursuant to the sublease, as it questioned the calculation of the amount. By May or June, 1996, the defendant was current on the taxes.

dant failed to make timely equipment lease payments for which the plaintiff sought to recover those amounts plus attorney's fees and costs, (2) the defendant failed to keep the equipment in good repair for which the plaintiff sought maintenance costs and (3) the defendant removed certain items of equipment without the plaintiff's permission for which the plaintiff requested the return of the items or their economic equivalent. Counts three and four alleged conversion and theft of equipment, respectively. In its appeal, the plaintiff does not address the propriety of the court's judgment with respect to counts three and four.

In early 1996, the defendant had removed some equipment from the premises to be repaired. By letter dated April 18, 1996, the defendant's attorney asked the plaintiff's attorney for permission to remove an unused oven to make room for other equipment. By letter, the plaintiff conditioned its consent on, inter alia, the defendant's paying the real estate taxes immediately as well as the plaintiff's attorney's fees within thirty days of billing. The conditions notwithstanding, the defendant removed the oven and stored it in various places over the next year.[4]

The defendant stored the oven and other items of equipment off the premises. Near the end of the term of the leases, the defendant's attorney wrote to the plaintiff's attorney, indicating that the defendant wanted to exercise its option to purchase equipment. Despite the defendant's interest, Kruth appeared on the premises on January 3, 1997, demanding the immediate return of all of the equipment. Subsequent negotiations were fruitless. The parties could not consummate a deal or decide on a method of return of the equipment; the

---

[4] The defendant eventually returned the oven to the plaintiff with almost all the rest of the equipment. The defendant conceded that it failed to return a telephone, wastebasket and toaster.

defendant wanted Kruth to retrieve the items at the premises, and Kruth wanted them delivered to her. Kruth eventually retrieved the equipment and sold it to a third party.

Following a trial to the court, the court awarded the plaintiff $20 on count two of the complaint for the defendant's failure to return a telephone, a wastebasket and a toaster. The court found for the defendant on the remaining counts. This appeal followed. Additional facts will be set forth as necessary in the context of the plaintiff's specific claims.

I

The plaintiff claims first that the court improperly concluded that the defendant made the required payments under the premises sublease. We disagree.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *SKW Real Estate Ltd. Partnership* v. *Mitsubishi Motor Sales of America, Inc.*, 56 Conn. App. 1, 6, 741 A.2d 4 (1999).

On this issue, the court found the following: "It is not disputed, in any event, that the entire amount of rent due under the [sublease] has in fact been paid. At one time, there may have been some dispute over the security deposit. The last month's rent was not paid, on the [defendant's] understanding that the security deposit would cover the last month's rent. [The plaintiff] disagreed, as it was not sure at that point as to any

liability it may have had to Foursquare [Associates], its lessor. Whatever disagreement, however genuine, there may have been as to this matter is now academic, as [the plaintiff] is 'off the hook' [with respect to its lease with Foursquare Associates], and no request is currently being made for the return of the security deposit."

In its brief, the plaintiff concedes, and the record supports, that the defendant paid all but the final month's rent. The court's conclusion with respect to all but the last month's rent is, therefore, not clearly erroneous. Regarding the final month's rent, the plaintiff argues that the court improperly concluded that the defendant's security deposit should be applied to satisfy the unpaid rent. The record reveals that the defendant has not made any claim for the return of its security deposit and, further, that the plaintiff was discharged from any liability under the lease with Foursquare Associates. We conclude that the court's finding that the security deposit constituted the defendant's final rent payment was, therefore, supported by the record and not clearly erroneous.

## II

The plaintiff claims next that the court improperly concluded that the defendant made the required payments under, and otherwise complied with, the equipment lease. We disagree.

We note first that while the plaintiff posits in this claim that the court's finding regarding equipment lease rental payments was improper, the plaintiff has failed to brief this claim adequately. "In order for this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Citation omitted; internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 100, 709 A.2d 14 (1998). In its brief, the plaintiff provides

no analysis of this part of its claim. "[A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) Id., 101. We, therefore, will not review this part of the claim.

We turn to that portion of the plaintiff's claim regarding the defendant's compliance with the equipment lease. The plaintiff argues that contrary to the court's conclusion, the uncontradicted evidence shows that the defendant damaged and failed to repair some equipment.[5]

The court determined that the plaintiff failed to sustain its burden of proof with respect to any specific damage to the equipment. We agree with this determination. The record reveals that the plaintiff, notwithstanding the defendant's request for a court order barring a sale of the equipment until it could be inspected for alleged damage, sold the equipment before any damage could be assessed.

### III

The plaintiff's final claim is that the court improperly concluded that the plaintiff was not entitled to attorney's fees incurred in its enforcement of the premises sublease or the equipment lease. We are not persuaded.

"[A]bsent contractual or statutory authorization, there can be no recovery, either as costs or damages, for the expenses of litigation or the expenditures for counsel fees by a party from his opponent. . . . Where a contract expressly provides for the recovery of reasonable attorney's fees, an award under such a clause

---

[5] The plaintiff argues further that the court improperly failed to find that the defendant removed certain items of equipment from the premises without the plaintiff's permission. We do not address this argument because, contrary to the plaintiff's assertion, the court did so find.

requires an evidentiary showing of reasonableness. . . . A trial court may rely on its own general knowledge of the trial itself to supply evidence in support of an award of attorney's fees. . . . The amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion." (Citations omitted; internal quotation marks omitted.) *Buccino* v. *Cable Technology, Inc.*, 25 Conn. App. 676, 679, 595 A.2d 376 (1991). "Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . ." (Internal quotation marks omitted.) *Krasowski* v. *Fantarella*, 51 Conn. App. 186, 199–200, 720 A.2d 1123 (1998), cert. denied, 247 Conn. 961, 723 A.2d 815 (1999).

A

The Premises Sublease

The sublease provides that "[e]ither party needing to take legal action to enforce this agreement will be entitled to reasonable legal fees from the other party." The plaintiff asked the court to award it more than $17,000 in legal expenses. The court did not award the plaintiff any legal fees. As our standard of review dictates, we review the court's decision for abuse of discretion.

In denying the plaintiff any recovery of legal fees under the sublease, the court concluded that litigation was not necessary to enforce the terms of the agreement. The court made the following relevant findings. Following the institution of legal proceedings, the defendant continued to pay rent as it had in the past, that is to say, it consistently paid rent, but frequently late. When the disputed property taxes were computed, the defendant paid them. Commencement of the action added another level of expense and inconvenience for

the parties. Otherwise late payments were further delayed as the addition of attorneys to the chain of payment increased the time consumed by the process. The plaintiff's attorney was the husband of the plaintiff's president and an officer of the plaintiff corporation and, although bills were actually presented, there was no evidence that they would be paid unless they were awarded by judgment. The hourly rates stated in the bills were equal to rates charged by attorneys specializing in litigation, although the plaintiff's attorney was not experienced in litigation. The court doubted that litigation would have been undertaken had the attorney-client relationship been an "ordinary business transaction." The court noted finally that the sublease contained no late fee provision and that to award attorney's fees to a party that brings suit because the other party has been consistently late in its payments would, as a practical matter, be tantamount to a late penalty far in excess of the amount of late rent, a result not agreed to by the parties.

The plaintiff's argument is essentially that at the time it brought suit, it was necessary to employ an attorney to prompt the defendant to make timely payments under the sublease. Our careful review of the record leads us to the conclusion that the court, on the basis of its findings, made an informed and logical decision on the issue of attorney's fees under the sublease and, in reaching its decision, did not exceed its discretion. Because we find no abuse of the court's discretion, the plaintiff's claim must fail.

B

The Equipment Lease

The plaintiff also argues that the court improperly concluded that the plaintiff did not need to incur legal expenses to enforce not only the rental provision of the equipment lease, but also the provisions on repair of

equipment and removing equipment from the premises without permission. We address these claims in turn.

The language regarding attorney's fees in both agreements is identical, and the circumstances surrounding payment were the same in both instances. Accordingly, we conclude, as we did in part III A of this opinion regarding the rental provision of the sublease, that the court did not exceed its discretion when it concluded that an attorney was not necessary to enforce the rental provision of the equipment lease.

As to the remaining provisions referred to, the plaintiff states in its brief that "the memorandum of decision does not address the issue of attorney's fees to enforce the nonrent provisions of the equipment lease." In its discussion of the equipment lease, however, the court stated that it did "not find that litigation was necessary to compel compliance with *any* of the terms of the [equipment] lease, and the [$20] actually recovered is too trivial to justify attorney's fees under all the circumstances of this case." (Emphasis added.) We note that the court determined that the plaintiff failed to sustain its burden of proof with respect to any specific damage to the equipment. As we concluded in part II of this opinion, we agree with this determination as well. Furthermore, at the time the plaintiff commenced the action, the only items removed from the premises were those taken by the plaintiff at the defendant's request and others taken to be repaired by the defendant, which it was obliged to do under the agreement. As to the defendant's having removed the oven without the plaintiff's permission, this occurred after the action was brought. We conclude that the court's denial of attorney's fees under the equipment lease was within its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.